William L. CAMERON, Trustee of Neptune Auto Parts, Inc., Bankrupt, Appellant,

v.

FEDERAL AUTO PARTS, INC., and William G. Gubbins, Appellees.

No. 19094.

United States Court of Appeals Fifth Circuit.

April 19, 1962.

Robert R. Frank and Frank & Weston, Miami Beach, Fla., for trustee.

No appearance for appellee.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is an appeal from a decision of the District Judge affirming a denial of a Turn Over Order by the Referee. While the record is skimpy, with not even a shadow of findings of fact as required by General Order 47,[1] the appellant's brief is sketchy and we have received no help whatsoever from the appellees by way of brief or oral argument, we conclude that the case should be reversed.

The basis for the Turn Over Order was a fraudulent transfer of the entire assets of the Bankrupt for an inadequate consideration within one year prior to bankruptcy under § 67, sub. d (2) (a), 11 U.S.C.A. § 107, sub. d(2) (a).

The Bankrupt was Neptune Auto Parts, Inc. Its President was Appellee Gubbins, who was the principal stockholder of the purchaser-transferee corporation, Federal Auto Parts, Inc. The bankruptcy petition was filed October 30, 1959, and Neptune was adjudicated a Bankrupt November 23, 1959. The Bankrupt had two retail establishments, one in Miami, the other at Pompano Beach, Florida.

On June 8, 1959, Gubbins, still President of Neptune, purchased all of its assets for a transfer to Federal, a corporation to be formed (this was effectuated June 15, 1959). Not one cent was paid in cash as the transaction took the form of a payment by Federal of $5,000 to a bank which held a note of Neptune on which Gubbins and another stockholder were liable as endorsers or guarantors. Gubbins and Federal also agreed, he said, to assume payment of another note in the sum of $3500. Federal also assumed, so he testified, payment of $7,884 in accounts payable. This, at face value, aggregated $16,384, an amount in excess of the value fixed for the assets of $15,976.18.

Admittedly no notice was given to creditors as required by the Florida Bulk Sales Law, F.S.A. § 726.04. Indeed, in the Certificate of Review, see note 1, supra, the Referee expressly found that "the Trustee proved that the respondents failed to comply with Sec. 726.04 F.S.A. (Bulk Sales Law.)" Federal and Gubbins defended on the ground that the Florida statutory presumption of fraud arising from noncompliance with the Florida Bulk Sales Law was overcome by a showing of a sale for an adequate consideration.

We need not determine whether this result occurs under the Florida law for we think that as a matter of law the transferee failed to prove that the consideration was adequate, and hence, the presumption of fraud, if rebuttable, was not overcome. In doing so we reject as clearly erroneous the finding of the Referee recited in the Certificate of Review that "the respondent overcame the presumption [of a fraudulent conveyance] with the proof that the sale was for a fair consideration; * * *."

The contention of fair consideration as a means of neutralizing the statutory presumption of fraud put the burden on the transferee. At most, Federal and Gubbins proved that Gubbins and Federal had assumed certain liabilities. Whether such "assumption" had any economic value, as distinguished from legal validity, was a part of this defense. The $5,000 note apparently was paid, but as to the others, the record is vaguely silent. Whether, and to

---

1. As noted later, the Referee undertook to find facts in the Certificate of Review.

what extent, accounts payable were paid or the liability of the Bankrupt estate thereby reduced is a complete unknown. In the circumstances of this record where Neptune through Gubbins was dealing with Gubbins for Federal—and a major concern of all of the participants seemed to be how to reduce the potential personal liability of stockholders as guarantors on Neptune's obligation to the bank—we think the burden was heavy on Federal and Gubbins to establish money's worth for the so-called assumptions. This burden was not met. It was, on the proof, a "paper" assumption by a newly formed corporation of unknown capitalization and financial resources. If these agreements had economic value, it was up to the transferees to prove it.

Moreover, this assumption, if one having an ascertainable money value, was legally unenforceable, and hence legally worthless. It was a promise by Federal and Gubbins to answer for the debt or default of another (Neptune), and as such, the Florida Statute of Frauds required that it be in writing signed by the party to be charged. F.S.A. § 725.01. The record reflects no such writing.

All of the evidence very briefly summarized was received without any substantial objection. Under General Order 37 incorporating the Federal Civil Rules of Procedure where not inconsistent with the Bankruptcy Act, this brought into play F.R.Civ.P. 15(b), 28 U.S.C.A. It is immaterial, then, that the petition for a Turn Over Order spoke in terms of § 67(d) (2) (a). On the basis of these facts reflected by uncontradicted evidence, the claim was brought within § 70, sub. e(1), 11 U.S.C.A. § 110, sub. e(1). The term "creditors" under that section includes all of the existing creditors of the Bankrupt and if, as contended by the appellees, the Florida statute merely establishes a presumption of fraud, it is clear that "the burden is on the purchaser to present some evidence to show that the transfer was for a full and fair consideration * * *." 4 Collier, Bankruptcy, § 70.74

at 1572. As stated above, there was a candid acknowledgment that no effort had been made either by Gubbins as President of Neptune, the Transferor, or Gubbins as the Purchaser for Federal, the Transferee, to give the notices required by the Florida Bulk Sales Act. If this could be excused by payment of an adequate consideration, it was up to the Transferee to establish it. All the Transferee established was that there were some agreements to pay, but whether they had any value or were enforceable either in fact or law was not shown at all.

Consequently, the Turn Over Order was compelled as a matter of law, and the case must be reversed and remanded with directions to enter appropriate orders for a Turn Over including an accounting as to properties subsequently disposed of. 4 Collier, supra, at 1571.

Reversed and remanded with directions.